

ENTERED
CLERK, U.S. DISTRICT COURT
AUG - 7 2007
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Priority ✓
Send ✓
Enter ✓
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT
AUG - 3 2007
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD R. CHASTAIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNION SECURITY LIFE INSURANCE COMPANY,<br><br>Defendant. | CV 06-5885 ABC (FFMx)<br><br>ORDER RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION |

Pending before the Court is Defendant Union Security Life Insurance Co.'s ("Defendant's") Motion to Compel Arbitration and Stay Proceedings, filed on May 31, 2007. Plaintiff Donald Chastain ("Plaintiff") opposed Defendant's motion on June 18, 2007 and Defendant replied on July 2, 2007. The hearing was set for August 6, 2007, but the Court took this matter under submission on August 2, 2007. See Fed. R. Civ. P. 78; Local Rule 7-15. The Court hereby DENIES Defendant's motion to compel arbitration.

114

## I. FACTUAL BACKGROUND

This case arose from Defendant's alleged failure to pay benefits under two insurance policies purchased by Plaintiff. The relevant facts are undisputed. Defendant underwrote two insurance policies purchased by Plaintiff through two credit cards issued by FirstUSA Bank, N.A. (later Bank One, Delaware, N.A., and then Chase Manhattan Bank USA, N.A.) (the "FirstUSA card") and by Citibank (South Dakota) N.A. (the "Citibank card"). The policies covered Plaintiff's minimum monthly payments on his two credit cards up to a benefits maximum, should Plaintiff become disabled and unable to make his minimum payments. Plaintiff alleges three causes of action against Defendant for allegedly terminating Plaintiff's benefits before reaching the benefits maximum under the policies: (1) breach of the insurance contracts; (2) declaratory relief under the insurance contracts; and (3) fraud arising from representations related to the coverage contained in the insurance contracts.[1]

Sometime prior to April 2000, Plaintiff entered written credit cardmember agreements to obtain both the FirstUSA card and the Citibank card. In November 2001, Citibank amended the cardmember agreement to include an arbitration clause that stated: "Any dispute may be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to a jury and the right to participate in a class action or similar proceeding." This amendment defined the scope of the arbitration clause: "All claims relating to your account . . . or our relationship are subject to arbitration,

---

[1]Plaintiff has styled this case as a class action, but the Court has not certified a class. Therefore, the Court relies solely on the allegations related to Plaintiff in deciding this motion.

including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy they seek." This amendment also contained an opt-out provision, but Plaintiff did not take advantage of it.

The FirstUSA cardmember agreement was amended in November 2003 to include an arbitration provision that stated: "Any dispute may be resolved by binding arbitration. Arbitration replaces the right to go to court. You will not be able to bring a class action or similar proceeding in court, nor will you be able to bring any claim in arbitration as a class action or similar proceeding. You will not be able to be part of any class action or similar proceeding brought by anyone else, or be represented in a class action or similar proceeding." The amended agreement also stated that arbitration is required for "[a]ny claim, dispute or controversy by either you or us against the other (or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other) arising from or relating in any way to your Account, transactions on your Account, our relationship, this Agreement or any provisions of this Agreement ('Claim'), including Claims regarding the applicability or validity of this arbitration clause." The amendment also stated, "All claims are subject to arbitration, no matter what theory they are based on or what remedy they seek." Both parties agree that the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), applies to both agreements.

Defendant did not sign either of these agreements. Rather, Defendant issued group insurance policies to FirstUSA and Citibank and sold Plaintiff individual policies under these group policies. The

insurance contracts between Plaintiff and Defendant did not contain an arbitration clause, and only referred to "legal actions," which prevented Plaintiff from bringing legal action until 60 days after written proof of loss is submitted to Defendant. These contracts also contained identical integration clauses that stated, "[t]he entire contract consists of this policy and the attached application. No change of the policy and no waiver of its provisions will be valid unless made in writing and signed by one of our officers." Notably, the insurance contracts made no references to the cardmember agreements and the cardmember agreements made no reference to the insurance contracts.

Plaintiff became disabled and sought benefits under the insurance policies he obtained for both the FirstUSA card and the Citibank card. Citicorp Insurance Services, Inc. ("Citicorp") administered the insurance policy that Defendant obtained for his Citibank card, but the undisputed evidence demonstrates that when Defendant terminated Plaintiff's benefits in September 2004, Citicorp was not administering Plaintiff's policy. Defendant asserts that Citicorp was an agent of Citibank.

Defendant has invoked the two arbitration clauses and, as a non-signatory, seeks to compel Plaintiff, a signatory, to arbitrate his claims. Although Defendant spends a substantial amount of effort briefing on the scope and validity of the arbitration agreements, Plaintiff does not dispute these points. Rather, the papers clearly delineate one primary issue before the Court: whether Defendant, as a non-signatory, can compel Plaintiff to arbitrate his claims, either through equitable estoppel or through a theory of agency. The Court finds that neither theory applies in this circumstance and Plaintiff

cannot be compelled to arbitrate his claims against Defendant.

**II. LEGAL STANDARD**

Under the FAA, the question of whether a nonsignatory to an arbitration agreement can compel a signatory to submit to arbitration is answered not by state law, but by the federal substantive law of arbitrability. International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417 (4th Cir. 2000). A petition or motion to compel arbitration is in essence a suit in equity seeking specific performance of an arbitration agreement. Wolschlager v. Fidelity Nat'l Title Ins. Co., 111 Cal. App. 4th 784, 789 (2003). The trial court sits as a trier of fact, weighing all the declarations and other evidence to reach a final determination. Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951, 972 (1997).

The standard for demonstrating arbitrability is not strict and the FAA mandates that district courts direct the parties to proceed to arbitration on issues pursuant to a signed arbitration agreement. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). The court's role when presented with an issue of arbitrability is to determine (i) whether an actual valid arbitration agreement exists and (ii) whether the scope of the parties' dispute falls within that agreement. See 9 U.S.C. § 4; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th. Cir. 2000). Federal courts must order parties to proceed to arbitration if there has been a "failure, neglect, or refusal" to honor an agreement to arbitrate. See 9 U.S.C. § 4. Therefore, absent unmistakably clear language to the contrary, arbitration should be ordered unless it can be said that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.

SCANNED

Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (stating that "[s]ection 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.").

As a general matter, "arbitration is a matter of contract [interpretation] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." International Paper, 206 F.3d at 416. Despite this policy, it is well-established that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to arbitrate even though the signatory and nonsignatory lack an agreement to arbitrate. See Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006). In this circumstance, however, the federal policy favoring arbitration falls away: "The question here is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite." Id. at 1104 n.11. Therefore, the Court is not bound by any stated policy encouraging arbitration in reviewing Defendant's motion.[2]

---

[2]Defendant argues fervently that the strong policy in favor of arbitration under the FAA compels arbitration in this circumstance, relying on Supreme Court statements that the only reason for denying arbitration is when it "may be said with positive assurance that the arbitration clause is not susceptible of any interpretation that covers the asserted dispute." United Steel Workers of Amer. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). Defendant also attempts to counter footnote eleven from Comer with dicta in Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185, 1187-188 (9th Cir. 1986), where the court stated that the policy allowing nonsignatory enforcement of arbitration agreements is an outgrowth of the broader federal policy favoring arbitration. However, Defendant's arguments mischaracterize Comer: there, the Ninth Circuit squarely

## III. DISCUSSION

### A. Arbitrability of Disputes over the Applicability of the Arbitration Clause

As an initial matter, Defendant argues that, because Plaintiff agreed to submit any claims regarding the application of the arbitration clause to an arbitrator, the Court should decline to resolve this question in favor of a decision by the arbitrator. See Dream Theater, Inc. v. Dream Theater, 124 Cal. App. 4th 547 (2004); Huber, Hunt Nichols, Inc v. Unites Assoc. of Journeymen, etc., 282 F.3d 746, 749 (9th Cir. 2002). Defendant's argument is unavailing. Defendant has cited no case in which the question of non-signatory enforcement was submitted to the arbitrator. To the contrary, in the cases cited by both Plaintiff and Defendant, courts have routinely determined the merits of the non-signatory enforcement issue. See, e.g., Brantley v. Republic Mortgage Ins. Co., 424 F. 3d 392 (4th Cir. 2005); Choctow Generation L.P. v. American Home Assurance Co., 271 F.3d 403 (2d Cir. 2001); Comer, 436 F.3d at 1098; Letizia, 802 F.2d at 1185; MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999). Moreover, this makes logical sense because "[a]rbitrability is ordinarily for courts, not arbitrators, to decide unless the parties agree otherwise. Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakeable evidence that they did so." Poweragent Inc. v. Electronic Data Sys.

---

addressed the issue before this Court, namely, whether the policy established by the FAA applied in adjudicating the question of whether a non-signatory was subject to a contractual arbitration clause. The Ninth Circuit also decided Comer in 2006, twenty years after the blanket statement in Letizia. Given the recency and specificity of the Ninth Circuit's comments in Comer, the Court finds that it is not bound to decide the instant case pursuant to the liberal policy favoring arbitration.

Corp., 358 F.3d 1187, 1192 (9th Cir. 2004). Defendant never signed the cardmember agreements containing the arbitration clauses and Plaintiff never agreed to submit to the arbitrator the question of arbitrability of claims against Defendant. It would be incongruous to allow Defendant to compel an arbitrator to decide the question of arbitrability when Defendant was not a signatory to the arbitration clause and the parties did not agree to arbitrate the arbitrability question. Because there is no "clear and unmistakeable evidence" that the parties agreed to arbitrate the arbitrability question, the Court may properly decide whether Defendant, as a non-signatory, can enforce the cardmember arbitration clauses against Plaintiff.[3]

**B. Non-signatory Enforcement**

Generally, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." Comer, 436 F.3d at 1101 (quoting Letizia, 802 F.2d at 1187-88). "The Federal courts have identified five theories pursuant to which an arbitration clause can be enforced by or against a nonsignatory . . .

---

[3]Defendant further argues that the arbitration agreements contained a choice of law provision, and under the holding in Provencher v. Dell Inc., 409 F. Supp. 2d 1196 (C.D. Cal. 2006), this Court must abide by the law of the forums chosen. In the case of the FirstUSA cardholder agreement, the choice of law is Delaware, and for the Citibank cardholder agreement, the choice of law is South Dakota. In both jurisdictions, the question of arbitrability is submitted to the arbitrator. See, e.g., James & Jackson, LLC v. Gary, LLC, 906 A.2d 76, 80 (Del. 2006); Peska Constr. Co. v. Portz Inv., 672 N.W.2d 483, 487 (S.D. 2003). Again, Defendant ignores that the threshold question is whether Defendant, as a non-signatory, can hold Plaintiff to contracts that Defendant did not sign. Like the clause in the contract between Plaintiff and the credit card companies compelling an arbitrator to determine arbitrability, there is no "clear and unmistakeable evidence" that Defendant - a non-signatory - agreed to the choice of law provisions. Therefore, these parties are not bound by it.

'1) incorporation by reference 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" Boucher v. Alliance Title Co. Inc., 127 Cal. App. 4th 262, 268 (2005) (citing Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)). Only equitable estoppel and agency theories are at issue in this case.

1. Equitable Estoppel

Defendant argues that Plaintiff should be equitably estopped from disavowing its agreement to arbitrate any claims under the cardmember agreements. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Comer, 436 F.3d at 1101. Although the Ninth Circuit has only addressed this issue in one case, other circuits have issued helpful decisions.[4] At least two circuits have outlined two types of equitable estoppel theories, both of which Defendant invokes:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must "rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[] out of and relate[] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of

[4]Comer is of limited assistance because it involved a signatory invoking an arbitration clause against a non-signatory. Here, Defendant, a non-signatory, is seeking to enforce the arbitration agreement against Plaintiff, a signatory.

arbitration effectively thwarted."

Brantley, 424 F.3d at 395-96 (quoting MS Dealer, 177 F.3d at 947) (brackets and quotations in original) (internal citations omitted).

"By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement. The focus is on the nature of the claims asserted by the plaintiff against the nonsignatory defendant. That the claims are cast in tort rather than contract does not avoid the arbitration clause." Boucher, 127 Cal. App. 4th at 272 (citing Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 756-57 (11th Cir. 1993)). "The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved." Id.

Regarding the "intertwined-claims" theory, Defendant asserts that, since it issued group policies to each credit card company, it has established a significant relationship with these credit card companies. Defendant argues that pursuant to the group policies and relationship between the credit card companies and itself, "[t]he very terms of the insurance contract's benefits are set based on the amount and terms of the credit card debt. Premiums for the insurance were charged to the credit cards. Interest was not charged by USLIC, but was set by the terms of the credit card agreements. There is no reason for the insurance contract other than the credit card relationship and the credit card debt." (Mot. at 18:4-9.) Defendant also claims that, because Plaintiff's complaint frequently refers to the cardmember agreements, Plaintiff's claims are intertwined with

those agreements. Additionally, Defendant argues that Plaintiff complains that Defendant committed fraud in marketing by making arrangements to "jointly market" and sell the credit insurance to customers of the credit card companies. Therefore, Plaintiff's claims against the insurance company are related to the credit card companies and the credit card agreements' arbitration clauses should apply to a dispute between Defendant and Plaintiff, the cardholder.

The Court must look to the Complaint to determine whether Plaintiff's claims are intertwined with the cardmember agreements. See American Bankers Ins. Grp., Inc. v. Long, 453 F.3d 623, 627 (4th Cir. 2006). Plaintiff has not named the credit card companies as defendants and has not accused them of any wrongful act or omission. Rather (and necessarily), Plaintiff refers to them frequently in alleging claims against Defendant, the insurer of the debt Plaintiff owed to the credit card companies. Defendant argues that this is enough - that Plaintiff necessarily has "relied on" the cardmember agreements such that estoppel is appropriate. The Court disagrees.

The purpose of estoppel is to prevent a plaintiff from availing himself of the favorable parts of a contract while disavowing the unfavorable parts - here, the arbitration clause. From a practical perspective, the Court cannot see how Plaintiff is attempting to invoke the favorable parts of the cardmember agreements, while simultaneously arguing against arbitration. This illustrates the fundamental problem with Defendant's intertwined-claims theory. Plaintiff's breach of contract claim arises from Defendant's alleged failure to fulfill its obligations in the insurance contract; Plaintiff's declaratory judgment claim seeks to establish Plaintiff's rights under the insurance contract; Plaintiff's fraud claim relies on

Defendant's marketing of the insurance contract. Nowhere in the Complaint does Plaintiff truly "rely" on the terms of the cardmember agreements in stating any of these claims.

The broad "rely on" and "makes references to" language in Brantley and MS Dealer is somewhat misleading, and Defendant seeks to exploit the apparent overly broad formulation. The test is not so broad as to allow Defendant to simply point to the paragraph in the complaint where Plaintiff refers to the contract containing the arbitration clause. Rather, the proper scope of this test was suggested by the court in Long, when it reviewed the estoppel question under the rubric of the "duties" arising from the agreement that the plaintiff claimed the defendant breached. See Long, 453 F.3d at 627-28. In Long, the court looked at the equitable estoppel question (albeit a question different from the one at issue here, as discussed infra) and stated, "estoppel is appropriate if in substance [the signatory's underlying] complaint [is] based on the [nonsignatory's] alleged breach of the obligations and duties assigned to it in the agreement." Id. at 628 (brackets in original) (citation omitted). Therefore, to determine whether claims are intertwined, the Court must looked to the duties breached by Defendant as alleged in the Complaint.

Viewed in this light, Plaintiff's Complaint clearly does not "rely" on the cardmember agreements such that his claims are intertwined with those agreements. True, the insurance contracts were created because Plaintiff had cardmember agreements and wished to insure against a later inability to pay that debt due to disability. But the *duty* Defendant allegedly breached was the obligation to pay the promised insurance coverage. That the parties would have to look

to Plaintiff's credit card balances to fix the amount of that debt is of no moment. Defendant's duty was to insure against potential loss, and Plaintiff alleges that Defendant failed to do that. Plaintiff need not rely on a breach of any duty created by the cardmember agreement to allege this claim against Defendant.

Plaintiff relies on Brantley as the most factually analogous case. In Brantley, the plaintiffs obtained a mortgage that contained an arbitration clause and a provision mandating mortgage insurance. 424 F.3d at 394. The plaintiffs obtained mortgage insurance from the defendant, but that contract did not contain an arbitration clause. Id. at 395. The plaintiffs later sued the defendant-insurer, claiming that it improperly increased mortgage premiums based upon credit scores, in violation of federal credit reporting laws. Id. at 394. The defendant, a non-signatory, attempted to enforce the arbitration clause in the mortgage agreement, arguing that the plaintiffs should be equitably estopped from disavowing it based in part on an intertwined-claims test. Id. at 396. The court determined that the intertwined-claims theory of estoppel did not apply, even though the insurance premiums referred to the underlying mortgage contract:

> The lawsuit in the current case deals with Republic Mortgage's insurance premiums, and an allegation that these premiums were increased due to information contained in the plaintiffs' credit histories. This claim is a statutory remedy under the Fair Credit Reporting Act and is wholly separate from any action or remedy for breach of the underlying mortgage contract that is governed by the arbitration agreement. Although the mortgage insurance relates to the mortgage debt, the premiums of the mortgage insurance are separate and wholly independent from the mortgage agreement. The district court correctly found that the mere existence of a loan transaction requiring plaintiffs to obtain mortgage insurance cannot be the basis for finding their federal statutory claims, which are wholly unrelated to the underlying mortgage agreement, to be intertwined with that contract.

Id. at 396.

Defendant claims that Long is more factually analogous and should control the Court's decision. In Long, the plaintiffs signed both a subscription agreement and a promissory note for an offering of debt by a third-party; the defendant did not sign either contract. 453 F.3d at 625. The subscription agreement contained an arbitration clause, and, although the promissory note did not contain an arbitration provision, it incorporated by reference the terms of the subscription agreement. Id. The plaintiffs then alleged that the defendant, along with the unnamed third-party, engaged in fraudulent activities when issuing the promissory notes and sued the defendant under nine tort and statutory theories. Id. The plaintiffs specifically did not plead any claims for a breach of the promissory note. Id.

The defendant, a non-signatory, sought to enforce the arbitration clause in the subscription agreement against the plaintiffs, who argued that "their underlying complaint does not allege that [the defendant] breached a duty created by *the Note*." Id. at 630 (emphasis added). The court found that the tort and statutory causes of action in the complaint as to the promissory note were actually artfully pled claims for the breach of duties arising from the promissory note itself. Therefore, the court found that, "because the Note was incorporated into the Subscription Agreement, it would be inequitable to allow the Longs to seek recovery on their individual claims and at the same time deny that [the defendant] was a party to the Subscription Agreement's arbitration clause." Id. at 630.

A close reading of Brantley and Long reveals that those courts addressed two different questions. In Brantley, the court analyzed

the relationship between the duties allegedly breached as asserted in the complaint (there, the credit reporting statute), on the one hand, and the duties created by the contract containing the arbitration clause, on the other hand. In Long, in contrast, the relationship between the defendant's duties in the promissory note and the duties in the subscription agreement containing the arbitration clause were the same: the promissory note incorporated the subscription agreement by reference. Therefore, the only question was whether the plaintiffs had artfully pled that the defendant's duties arose from tort law and statutes, rather than the integrated promissory note/subscription agreement. That situation is no different from a factual scenario where a plaintiff, a signatory, sues a defendant, also a signatory, alleging a breach of duties imposed by tort law in order to avoid pleading a breach of duties created by the contract containing an arbitration clause. The court's analysis in that circumstance would be identical to Long's analysis: did the plaintiff artfully plead breach of contract claims to avoid the arbitration clause?

The instant case raises the question raised in Brantley, not the question raised in Long: what is the relationship between Plaintiff's claims under the insurance contract and the cardmember agreements? As in Brantley, Plaintiff merely refers to the cardmember agreements, but the duties Defendant allegedly breached arose from the insurance contracts, not the cardmember agreements. This is not a case of artful pleading; the Court cannot envision any way in which Plaintiff could add FirstUSA or Citibank as parties and still rely on the same causes of action and same facts as currently pled. In other words, Plaintiff's claims and factual allegations against Defendant appropriately stand on their own in the absence of FirstUSA and

Citibank as defendants.

Finally, equitable considerations does not compel arbitration under the intertwined-claims theory in this circumstance. Here, Plaintiff has done nothing to rely on or invoke the terms of the cardmember agreement, while attempting to avoid arbitration of those claims. As discussed above, Plaintiff's claims arise from the insurance contracts and there simply is no reason in equity to estop Plaintiff from disclaiming the arbitration clause in an agreement that he has otherwise not invoked.[5]

Defendant also cannot enforce the arbitration clause based on Brantley's second circumstance, that Plaintiff has alleged "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." 424 F.3d at 396. Plaintiff's complaint contains a single allegation that Defendant and the credit card companies "jointly marketed" the insurance policies. This is insufficient to demonstrate "substantially interdependant" misconduct for two reasons: (1) this single allegation does not rise to the level of "substantial"; and (2) Plaintiff does not assert that the joint marketing was fraudulent. Rather, Plaintiff's entire Complaint rests upon allegations against Defendant for Defendant's actions vis-a-vis Plaintiff. Moreover, this

---

[5]Plaintiff persuasively distinguishes the cases cited by Defendant for the position that the cardmember agreements and Plaintiff's claims are intertwined. Defendant's case law involves factually dissimilar situations where: (1) both signatories and nonsignatories were co-defendants; (2) the claims alleged concerted misconduct between signatory and nonsignatory defendants; and (3) the claims were directly based on a breach of the underlying contract containing the arbitration provision. See, e.g., MS Dealer, 177 F.3d at 944-45; Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 525-26 (5th Cir. 2000); Choctow, 271 F.3d at 403-06.

"concerted misconduct" rationale rests on the theory that the unnamed "signatory, in essence, becomes a party, with resulting loss, *inter alia*, of time and money because of its required participation in the proceeding . . . but, the plaintiff is seeking to avoid that agreement by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory." Grigson, 210 F.3d at 528. In other words, Plaintiff cannot artfully plead around an arbitration agreement simply by naming a non-signatory defendant who acted in concert with the signatory. This is not the present circumstance. Plaintiff has not alleged any concerted misconduct and the Court cannot construe Plaintiff's claims in any way to suggest any wrongdoing by the credit card companies. Therefore, the Court rejects this argument.

2. Agency Theory as to the Citicorp Card

Defendant argues that, even if the court determines that it should decide issues of arbitrability, agents of a signatory to a contract containing an arbitration clause may be bound by ordinary agency principles. Agency is one ground upon which a non-signatory may force a signatory to arbitrate. Letizia, 802 F.2d at 1187-88 (finding that non-signatory employees were bound by employer's arbitration agreement with signatory plaintiff). The Citibank cardholder agreement specifically states that claims "against anyone connected with us or you . . . such as . . . agent, representative, affiliated company" are subject to the arbitration provision. Citicorp, an affiliate of Citibank, administered Plaintiff's insurance policy obtained through the Citibank card for a period of time. Defendant contends that "Plaintiff's allegations over an extended time period can only arise out of Citicorp's alleged actions as the claims

administrator and agent of USLIC [during that time period]." (Mot. at 20:19-24.) Defendant then makes the strained argument that, because Citicorp was an agent of Citibank, and Defendant hired Citicorp as a claims administrator, Defendant somehow became an agent of Citibank and could take advantage of the cardmember agreement's arbitration clause.

Plaintiff challenges the sufficiency of Defendant's evidence of an agency relationship between Citicorp and Citibank, but this question is irrelevant to the Court's decision. As a matter of law, Defendant's agency theory fails. The Eleventh Circuit in MS Dealer stated that the test for an agency theory of nonsignatory enforcement is whether "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." MS Dealer, 177 F.3d at 947 (citing Boyd v. Homes of Legend, Inc., 981 F. Supp. 1423, 1432 (M.D. Ala. 1997).

Here, Defendant has not demonstrated that its relationship with Citibank (rather than Citicorp) was close enough that not compelling arbitration of Plaintiff's claims would eviscerate the cardmember arbitration provision. The Citibank cardmember agreement states specifically that arbitration applies to "Claims made by or against anyone connected with us or you or claiming through us or you, such as . . . agent, representative, affiliated company." The parties do not dispute that Plaintiff has alleged no wrongdoing by Citicorp in administering the Citibank insurance policy, even assuming Citicorp was an agent of Citibank. Moreover, Defendant does not suggest that it was directly an agent of Citibank, so as to take advantage of the

cardmember agreement. Rather, it alleges that Citicorp was Citibank's agent, and Citicorp was Defendant's agent, so that makes Defendant closely related enough to Citibank to invoke the cardmember agreement. However, sharing an agent does not allow two principals to step into each other's shoes, which appears to be precisely what Defendant argues. Therefore, unlike Letizia where the employer-employee agency relationship was clear, Defendant has not demonstrated that it should be treated as an agent of Citibank so as to invoke the arbitration provision.

**IV. CONCLUSION**

Defendant, a non-signatory to the cardmember agreements, has not demonstrated that Plaintiff, a signatory, should be equitably estopped from denying the arbitration agreement and has not demonstrated that general agency principles compel enforcement of the Citibank cardmember arbitration provision against Plaintiff. Therefore, the Court hereby DENIES Defendant's motion to compel arbitration. Because the Court DENIES Defendant's motion to compel arbitration, the Court DENIES Defendant's request to stay the current proceeding pursuant to 9 U.S.C. § 3.

**IT IS SO ORDERED.**

**DATED:** August 3, 2007

Audrey B. Collins
**AUDREY B. COLLINS**
**UNITED STATES DISTRICT COURT**